IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **LARRY ZELMO DAVIS, #0228-0007,** ) | |
|        **Plaintiff,** ) | |
| vs. ) | No. 3:21-CV-2523-E (BH) |
| ) | |
| **UTMB, et al.** ) | |
|        **Defendants.** ) | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, the plaintiff's claims should be **DISMISSED**.

**I. BACKGROUND**

Larry Zelmo Davis (Plaintiff), a *pro se* Texas inmate, alleges that while he was confined at the Hutchins State Jail (Jail), a nurse (Nurse) working for the University of Texas Medical Branch (UTMB), gave him a shot of Pneumovax-23 (Pneumovax)[2], which caused him to become paralyzed from the waist down and to lose control of his bodily functions. (doc. 3 at 3-5.)[3] He is still paralyzed. (*Id.* at 4.)

Plaintiff claims that UTMB, Nurse, Jail, and Merck and Co. Inc.—the manufacturer (Manufacturer) of Pneumovax—all failed to warn him of a potential risk of paralysis associated with Pneumovax despite "being aware of the damages that the drug could cause." (doc. 9 at 2, 3, 4, 5, 9.) None of the defendants gave Plaintiff a "risk sheet" or told him about the potential side effects or dangers associated with the drug, including paralysis. (*See id.* at 2, 3, 4, 5, 6, 9.) Plaintiff alleges that

---

[1] By *Special Order No. 3-251*, this *pro se* prisoner case has been automatically referred for judicial screening.

[2] Pneumovax 23 is a vaccine against pneumococcal infection. *See*, *e.g.*, *Hart for Jaramillo v. Corr. Corp. of America*, No. 2:11-CV-00267-MCA-WPL, 2014 WL 12689319, at *1 (D.N.M. May 6, 2014)

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

had he known of the risk of paralysis, he would not have taken Pneumovax. (*Id.* at 10.)

Plaintiff contends that the failure to warn him of the risk of paralysis associated with Pneumovax amounts to deliberate indifference in violation of the Eighth Amendment to the United States Constitution and medical malpractice under state law. (*Id.* at 1, 3, 4, 9.) He seeks compensatory, punitive, and nominal damages, as well as an "annual check of $50,000 to cover life expenses each year." (*Id.* at 10.)

## II. PRELIMINARY SCREENING

As a prisoner proceeding *in forma pauperis*, Plaintiff's complaint is subject to review under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915. Because he is a prisoner seeking redress from a governmental entity or the officer or employee of such an entity, it is also subject to preliminary screening under 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous when it "lacks an arguable basis in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.

A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## III. SECTION 1983

Plaintiff sues under 42 U.S.C. § 1983. Section 1983 "provides a federal cause of action for

2

the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as constitutional norms." *Id.* To state a claim under § 1983, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

A. **Non-jural Entity**

Plaintiff named Jail as a defendant, asserting claims under § 1983 related to his medical care at that facility.

A plaintiff may not bring a civil rights action against a servient political agency or department unless that agency or department enjoys a separate and distinct legal existence. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). In *Darby*, the Fifth Circuit held that "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.* at 313. Jail "is not a separate legal entity subject to suit and therefore [is] not a proper defendant in this case." *Thomas v. Dallas Cnty.*, No. 3:21-CV-1245-X (BH), 2022 WL 17586306, at *2 (N.D. Tex. Nov. 21, 2022), *report and recommendation adopted*, No. 3:21-CV-1245-X-BH, 2022 WL 17585269 (N.D. Tex. Dec. 12, 2022) (citing in part *Holmes v. Hutchins*, No. 3:20-cv-3642-S-BN, 2020 WL 10090790, at *3 (N.D. Tex. Dec. 16, 2020), *rec. accepted* 2021 WL 2481682 (N.D. Tex. June 17, 2021) (finding that Jail was not subject to suit); *see also Lindley v. Bowles*, No. 3:02-cv-595-P, 2002 WL 1315466, at *2 (N.D. Tex. June 12, 2002) (finding that the Dallas County Jail was

not a separate legal entity ). Plaintiff's claims against Jail should be dismissed for failure to state a claim.

**B.**     **State Actor**

Plaintiff also names Manufacturer as a defendant, alleging deliberate indifference under § 1983. (doc. 9 at 6.)

The "under color of state law" requirement of § 1983 excludes from its reach purely private conduct, no matter how discriminatory or wrongful. *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982). In some circumstances, however, a private entity may be acting "under color of state law" and held liable under § 1983. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). For example, a plaintiff may allege that a private citizen conspired with or acted in concert with state actors. *See*, *e.g.*, *Priester v. Lowndes Cty.*, 354 F.3d 414 (5th Cir. 2004), *cert. denied*, 543 U.S. 829 (2004). For such a conspiracy to be plausible, the plaintiff must allege: (1) an agreement between the private and public defendants to commit an illegal act, and (2) a deprivation of constitutional rights. *Id.* Here, Plaintiff does not allege that Manufacturer conspired with a state actor.

In the absence of an alleged conspiracy with a state actor, a private party can be held to be a state actor (1) where there is a sufficiently close nexus between the state and the challenged action of the private party so that the action of the party may be fairly treated as that of the state itself, (2) where the private party has exercised powers that are "traditionally the exclusive prerogative of the state," or (3) where the state has exercised coercive power or has provided such significant encouragement, either overt or covert, that the action of the private party must in law be deemed to be that of the state. *Blum*, 457 U.S. at 1004; *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982) (recognizing three tests for determining whether a private party is acting under color of

4

state law: the public function test, the state compulsion test, and the joint action or nexus test).

Here, Plaintiff does not allege any facts to support a finding that Manufacturer should be treated as a state actor. (doc. 9 at 6.) Because he fails to state a plausible claim upon which relief may be granted, his § 1983 claims against Manufacturer should be dismissed.

**C.     Eleventh Amendment**

Plaintiff claims that UTMB was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment because it gave him Pneumovax without warning of the potential risks or side-effects. (doc. 9 at 1-2.)

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens or Subjects of any Foreign State." "This withdrawal of jurisdiction effectively confers an immunity from suit." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Therefore, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). This immunity applies to both federal and state law claims brought in federal court. *See Raj v. La. State Univ.*, 714 F.3d 322, 328-29 (5th Cir. 2013) (determining that sovereign immunity bars both federal and state law claims brought in federal court); *Robertson v. McShan*, No. 05-20055, 2005 WL 2673516, at *1 (5th Cir. Oct. 20, 2005) (per curium) (finding that Eleventh Amendment immunity divests federal courts of jurisdiction to hear federal and state law claims). This state immunity also "extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002).

Further, although Congress has the power to abrogate immunity through the Fourteenth

5

Amendment, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-76 (2000), and the State may waive its immunity by consenting to suit, *AT&T Commc'ns v. BellSouth Telecommns. Inc.*, 238 F.3d 636, 643 (5th Cir. 2001), the State has not waived its immunity by consenting to suit, nor has Congress abrogated the Eleventh Amendment by enacting 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Hines v. Miss. Dep't of Corr.*, No. 00-60143, 2000 WL 1741624, at *3 (5th Cir. Nov. 14, 2000) (per curium).

UTMB "is an agency of the State of Texas and as such, is shielded from suit by the State's Eleveneth Amendment immunity absent a waiver of this immunity." *Back v. TDCJ-CID*, Civil Action No. 6:16cv236, 2017 WL 1174504, at *8 (E.D. Tex. Jan. 24, 2017), *rec. accepted* 2017 WL 1155061 (E.D. Tex. Mar. 28, 2017) (citing *Harris v. Angelina Cnty.*, 31 F.3d 331, 338 n.7 (5th Cir. 1994); *Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1053 (5th Cir. 1998)).

Plaintiff has offered nothing to suggest that UTMB has waived its sovereign immunity with regard to his § 1983 claims. *See Back*, 2017 WL 1174504 at *8. His claims against UTMB should be dismissed without prejudice as barred by the Eleventh Amendment.

**D.     Deliberate Indifference**

In his questionnaire answers, Plaintiff alleges that Nurse was deliberately indifferent to his serious medical needs by giving him Pneumovax without warning him of potential side effects or dangers associated with the drug, including the risk of paralysis. (*See* doc. 9 at 3, 9.)[4]

The Constitution requires humane conditions of confinement, which includes the receipt of adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison officials violate this requirement only when (1) the deprivation is objectively and sufficiently serious such that the act

---

[4] Plaintiff's responses to the magistrate judge questionnaire constitute an amendment to his complaint. *See Macia v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

or omission results in the denial of "the minimal civilized measures of life's necessities" and (2) the official had a culpable state of mind. *Id.* at 834 (citations ommitted). The objective component requires deprivation of a sufficiently serious medical need "[b]ecause society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). To satisfy the second component, the officials must be deliberately indifferent "to a substantial risk of serious harm to the inmate." *Farmer*, 511 U.S. at 828. This state of mind requires more than negligence but less than intent to cause harm or knowledge that harm will result from the acts or omissions. *Id.* at 835. An official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

This state of mind "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.d 339, 346 (5th Cir. 2006) (citations and internal quotation marks omitted). An inmate must show that prison personnel "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't Crim. J.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). "[I]t is well-established that negligent treatment or even medical malpractice does not amount to deliberate indiffernce." *Stevenson-Cotton v. Cnty.*, No. 3:21-cv-98, 2022 WL 17324437, at *6 (S.D. Tex. Nov. 29, 2022) (citing *James v. Harris Cnty.*, 577 F.3d 612, 617-18 (5th Cir. 2009); *Gobert*, 463 F.3d at 349; *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001)).

Although the United States Court of Appeal for the Fifth Circuit does not appear to have

7

specifically addressed the issue, several other circuit courts have held that the failure to inform a prisoner of the side effects of medication might be negligence, but it is not deliberate indifference. *See Bryant v. Kaskie*, 744 F. App'x 39, 42 (3rd Cir. 2018) ("We agree with the District Court that Kaskie's alleged failure to inform Bryant of the potential side effects of Risperidone is insufficient to demonstrate deliberate indifference. Even if this allegation could rise to the level of negligence, simple negligence cannot support an Eighth Amendment claim.") (citation omitted)); *Holt v. McBride*, 539 F. App'x 863, 865-66 (10th Cir. 2013) (holding that doctor's "alleged failure to determine the side effects [such as heavy sleeping and drowsiness inmate experienced due to medications prescribed for neuropathy and HIV infection] d[id] not give rise to an Eighth Amendment claim" regarding inmate's fall from bunk); *Burgess v. Mar*, 395 F. App'x 368 (9th Cir. 2010) (failure to warn inmates of "the potential side effects of pain medicine constitute[s] negligence at most, and not deliberate indifference"); *Love v. Oglesby*, 2 F. App'x 678, 679 (8th Cir. 2001) (per curiam) (rejecting inmate's deliberate indifference claim stemming from the failure of prison doctor to warn inmate of risk of eye damage from anti-psychotic drug, noting that the decision to warn of potential eye damage "involved questioning the doctor's professional jugment and thus is not cognizable under section 1983") (citation omitted).

      Consistent with this persuasive authority, Plaintiff's failure-to-warn allegations do not rise to the level of deliberate indifference. Even if failure-to-warn allegations could state a cognizable deliberate indifference claim, however, Plaintiff has not plausibly alleged that Nurse was deliberately indifferent to his serious medical needs. While he relies on the alleged riskiness of the drug, he does not allege any facts from which it may be inferred that Nurse had subjective knowledge of a risk of serious harm to Plaintiff. The most he alleges is that "they were aware of the

8

damages that drug could cause and never made me aware." (doc. 9 at 10.) That Nurse might have been aware of some level risk in the abstract is insuffient. Plaintiff never alleges what that level of risk was or how Nurse would have known that he was susceptible to it. Without such allegations, the Court cannot reasonably infer that Nurse was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and that he actually drew that inference. *Farmer*, 511 U.S. at 837. Plaintiff's medical indifference claim against Nurse should be dismissed for failure to state a claim.

### IV. STATE LAW CLAIMS

Liberally construing his pleadings, Plaintiff sues UTMB and Jail for medical malpractice under the Texas Tort Claims Act (TTCA). (doc. 9 at 1-2.)

Under 28 U.S.C. § 1367(a), federal courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). In essence, § 1367(a) grants courts the "power to hear a state law claim under pendant or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleaus of operative fact." *McKee v. Texas Star Salon, LLC*, No. CIV.A.3:06-CV-879BH, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); *Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000).

When all federal claims are dismissed prior to trial, the general rule in this circuit is to decline exercising jurisdiction over the remaining state law claims. *LaPorte Constr. Co. v. Bayshore*

*Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); *see also* 28 U.S.C. § 1367(c)(3).[5] This rule is "neither mandatory nor absolute." *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted). Rather, district courts are given wide discretion in deciding whether to exercise jurisdiction under these circumstances. *See Heaton*, 231 F.3d at 997; *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also United Mine Workers*, 383 U.S. at 726 ("[P]endant jurisdiction is a doctrine of discretion, not of [a] plaintiffs right."). In exercising this discretion, courts should consider issues of judicial economy, convenience, and fairness to the litigants. *LaPorte Constr. Co.*, 805 F.2d at 1257. "[N]o single factor is dispositive", however. *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).

Here, the factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims because they arise from the same "common nucleus of operative facts" as his federal claims. Requiring him to litigate his claims in state court would "necessarily require consideration by two district courts of the same operative fact[s]" and the "same legal issues." *See McKee*, 2007 WL 2381246, at *4. Given that he has failed to state a plausible claim, allowing him to file suit in state court would impose unnecessary expenses on the court system and the parties involved. *See McCall v. Peters*, No. 3:00-CV-2247-D, 2003 WL 21488211, at *12 (N.D. Tex. May 11, 2003), *aff'd*, 108

---

[5] Under § 1367(c), a court may decline to exercise supplemental jurisdiction over a state claim if:

    (1) the claim raises a novel or complex issue of law,

    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

    (3) the district court has dismissed all claims over which it has original jurisdiction, or

    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

F. App'x 862 (5th Cir. 2004) (in determining whether to exercise pendant or supplemental jurisdiction, the court may consider factors such as the amount of time and resources spent adjudicating a case).

As discussed, Jail is a non-jural entity that lacks the capacity to be sued under Texas law, so any state-law claim against it should be dismissed with prejudice. *See*, *e.g.*, *Jackson v. Harris Cnty. Jail*, Civil Action No. H-22-3222, 2022 WL 4588414, at *2 (S.D. Tex. Sept. 29, 2022) ("Under Texas law, a county jail is not a separate legal entity capable of being sued.") (citing *Patterson v. Harris Cty. Jail*, No. H-09-1516, 2009 WL 10705736, at *3 (S.D. Tex. May 29, 2009) ("As a division within the Harris County Sheriff's Department, the Harris County Jail does not qualify as an entity with capacity under these rules because it cannot sue or be sued.").

As for UTMB, a state agency, sovereign immunity applies to bar any suit against it under the TTCA. The TTCA contains a waiver of suit provision, but only as to suits brought in Texas courts. "A state does not waive Eleventh Amendment immunity in federal courts merely by waiving sovereign immunity in its own courts." *Sherwinski v. Peterson*, 98 F.3d 849, 852 (5th Cir. 1996). The Fifth Circuit has determined that the TTCA "waives sovereign immunity in state court only." *Id.* A plaintiff cannot sue the State of Texas in federal court under the TTCA absent an express waiver of the immunity." *Horttor v. Livingston*, 1:16-CV-214-BL, 2019 WL 2287903, at *5 (N.D. Tex. May 29, 2019). Because Texas has not expressly waived its Eleventh Amendment immunity for suit under the TTCA in federal court, Plaintiff's medical malpractice claim against UTMB should be dismissed without prejudice for lack of subject matter jurisdiction.[6]

---

[6] It is not clear whether Plaintiff is also suing Nurse under the TTCA. He alleges that while working for UTMB at the Hutchins Unit infirmary, she gave him a shot that crippled him. (doc. 9 at 9.) It is well-established that "[i]mmunity under the TTCA extends to negligence or medical malpractice claims against a defendant in his or her individual and official capacity for the actions taken as a full-time health care provider employed by UTMB." *Taylor v. Poffinbarger*,

11

## V. OPPORTUNITY TO AMEND

The Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Brynes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.

Leave to amend is not necessary, however, where the plaintiff has already plead his best case. *See Wiggins v. La. State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (citations omitted). A verified questionnaire response allows a plaintiff to plead his or her best case and is a valid way for a pro se litigant to amend his complaint. *See Nixon v. Abbott*, 589 F. App'x 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a pro se litigant to develop the factual basis for his complaint.").

Here, Plaintiff has responded to a questionnaire and has had an opportunity to plead his best case. Further leave to amend is not warranted.

---

No. H-20-2428, 2021 WL 356831, at *11 n. 96 (S.D. Tex. Feb. 2, 2021) (citing *Franka v. Velasquez*, 332 S.W.3d 367, 381-83 (Tex. 2011)); *see also Denson v. TDCJ-CID*, No. 12-02-00099-CV, 2003 WL 21254862, at *16 (Tex. App - Tyler May 30, 2003, no. pet.) (commenting that "[t]he TTCA does not provide recovery [of damages] agains individual employed by the [State of Texas]," which includes health care providers employed by UTMB) (citation omitted). Any claim against Nurse under the TTCA is also barred by immunity.

12

## VI. RECOMMENDATION

The plaintiff's claims against the University of Texas Medical Branch should be **DISMISSED** without prejudice under the Eleventh Amendment. Plaintiff's remaining claims should be **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915A and 1915 (e)(2)(B).

**SO RECOMMENDED** on this 13th day of March, 2023.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE